## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES STEWART** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2526** |
| **WARDEN ROBERT TANNER, ET AL.** | **SECTION: "B"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Charles Stewart, a state prisoner, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. He sued Warden Robert Tanner, Lt. Col. Mike Todd, Lt. Donnie Seal, Capt. Kevin Luper, Dr. Casey McVea, Nurse Laura Buckley, Gina Zulli, and Kim Warner based on incidents which arose during his incarceration at the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.

Specifically, plaintiff makes the following allegations in his complaint: On June 9, 2012, defendants Todd and Seal threatened plaintiff, telling him that he would not leave the prison alive because they were going to make an example of him "for putting [his] hands on a officer." They then "wrote [him] up," falsely accusing him of threatening to kill them. After plaintiff reported the threats against him, defendant Warren placed him on a "suicide watch," supposedly to protect him from harm at the hands of the security officials.

Finding the "suicide watch" conditions unduly restrictive, plaintiff eventually went on a hunger strike to protest those conditions. On August 14, 2012, he was found in his cell "unconscious, dehydrated & simi comma [sic]." Defendant Buckley was called to the scene to

perform an assessment of plaintiff, and she gave permission for officers to use a chemical agent on him.  After he was sprayed twice with the chemical agent, his cell was opened, and he was attacked by three officers, shocked with an electric shield, and beaten.  Later that day, buckets of cold water were thrown on him to wake him, and he was taken to the infirmary for medical attention.  The prison doctor (presumably defendant McVea) told plaintiff that he would transfer him to another prison but could not do so because defendant Tanner had a personal vendetta against plaintiff.

Plaintiff thereafter continued his hunger strike, and, on August 27, 2012, the doctor ordered that plaintiff be brought to the infirmary.  He initially refused to go, but he relented after being threatened by defendants Seal and Todd.  Plaintiff requested that he be transported in a wheelchair, but that request was denied and he was again threatened with violence.  He reported those threats to the doctor, but nothing was done.

Plaintiff then continued his hunger strike.  Ultimately, the prison doctor informed plaintiff that his regular examinations by the medical department were being discontinued on the orders of defendant Tanner.  Plaintiff was told that he would not be seen again by the medical staff until he was dead or passed out, and, if the latter, he would be forcibly fed through a feeding tube.

Defendants have filed a motion for summary judgment arguing that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.[1]  Plaintiff has opposed that motion.[2]

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.

---

[1]   Rec. Doc. 9.

[2]   Rec. Doc. 12.

Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  <u>Taita Chemical Co., Ltd. v. Westlake Styrene Corp.</u>, 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); <u>see also</u> <u>Provident Life and Accident Ins. Co. v. Goel</u>, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  <u>Ragas v. Tennessee Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  <u>Id.</u>; <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1429 (5th Cir. 1996).

As noted, defendants argue that they are entitled to judgment as a matter of law because plaintiff failed to exhaust his administrative remedies prior to filing this federal lawsuit.  The Prison

Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The United Fifth Circuit Court of Appeals has noted:  "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'"  <u>Underwood v. Wilson</u>, 151 F.3d 292, 294 (5th Cir. 1998) (quoting Webster's New Int'l Dictionary 796 (3rd ed. 1981)).  Accordingly, an inmate's administrative remedies are not exhausted under § 1997e(a) until he has pursued his grievance through all steps of a multi-step administrative remedy procedure.  <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 (5th Cir. 2001).

Federal courts have taken a strict approach to the exhaustion requirement.  For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," <u>id</u>. at 532.  The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."  <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001).  The Fifth Circuit therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in <u>Booth</u>."  <u>Wright</u>, 260 F.3d at 358.

The Fifth Circuit recently emphatically reiterated that the exhaustion requirement is mandatory and cannot be excused by a federal court.  The Fifth Circuit held:

[T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory.  We thus hold that <u>Underwood</u> has been tacitly overruled and is no

4

*longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.*

Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added; footnote omitted); see also

Wendell v. Asher, 162 F.3d 887, 890-91 (5th Cir. 1998) ("Absent a valid defense to the exhaustion

requirement, the statutory requirement enacted by Congress that administrative remedies be

exhausted *before* the filing of suit should be imposed. To hold otherwise would encourage

premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA,

which was to provide the federal courts some relief from frivolous prisoner litigation." (citations

omitted)).

In support of their motion, defendants have provided certified copies of the pertinent

grievance records. Those records show that, on or about September 4, 2012, plaintiff filed a

grievance concerning the use of force on August 14, 2012.[3] Because he already had another

grievance pending in the system, he was informed that his new grievance was being "backlogged"

pursuant to prison policy. He was further informed that his grievances would be handled in order

and that the new grievance would be handled immediately only if his prior grievance was

withdrawn.[4] The new grievance was ultimately considered, found to be meritless, and denied on

---

[3]   Rec. Doc. 9-3, pp. 6-9.

[4]   Id. at p. 5.

5

January 4, 2013.[5]  On that same date, plaintiff filed an administrative appeal to challenge the denial

of the grievance.[6]  The record before the Court does not reflect the current status of that appeal.

Based on the evidence presented, the Court finds that no genuine issue of material fact

remains in dispute concerning plaintiff's failure to exhaust his administrative remedies prior to filing

the instant lawsuit.  There is no evidence that he filed a grievance on any of the claims in this lawsuit

other than the claim concerning the incident on August 14, 2012; further, it is clear from the certified

records submitted by defendants that plaintiff's administrative grievance concerning that incident

was still pending before prison officials at the time this federal lawsuit was filed on or about

September 4, 2012.[7]  Because plaintiff did not *completely exhaust* his administrative remedies *prior*

to filing this federal civil action, defendants are entitled to judgment as a matter of law, and

plaintiff's claims should be dismissed without prejudice, but with prejudice for the purpose of

proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.  See Underwood v. Wilson, 151 F.3d

292, 296 (5th Cir. 1998); Wiley v. Mangrum, 146 Fed. App'x 757 (5th Cir. 2005); Johnson v.

Travis, Civ. Action No. 07-213, 2007 WL 1433896, at *2 (E.D. La. May 14, 2007).

---

[5]  Id. at pp. 2-3.

[6]  Id. at p. 3.

[7]  A prisoner's complaint is considered "filed" when it is given to the prison authorities for mailing to the Clerk of Court.  Cooper v. Brookshire, 70 F.3d 377, 378 (5th Cir. 1995).  That date is not clear from the record, but the complaint was signed on September 4, 2012, and it was mailed in an envelope with a postage meter stamp dated the following day.  It was received by the Court on September 6, 2012.

## <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's federal claims be dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[8]

New Orleans, Louisiana, this nineteenth day of February, 2013.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[8]   <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.